## R. B. WOFFORD AND OTHERS, v. H. F. McKINNA.

The deed of an assessor and collector, for land sold by him for taxes, is a "deed" within the meaning of the sixteenth section of the statute (O. & W. Dig. C. S. Art. 1329); and will support the plea of limitation of five years under it, without proof of his authority to sell.

This section of the statute requires, that the instrument relied upon should, by its own terms, or with such aid as the law requires, assume and purport to operate as a conveyance; and it must have, tested by itself, all the constituent parts of a good and perfect title. If, however, it be made by an agent, though the production of his power is necessary to render the conveyance operative to pass the title, it is not to constitute it a deed.

A deed for a certain number of acres of land, to be taken out of a larger tract, which describes the land sold as commencing at the beginning corner of the original tract, and to be taken in a square, if it will admit of it, leaves it uncertain, from its terms, in what form the land is to be taken, and is void for uncertainty in the description, unless it can be aided by matter extrinsic of itself.

In a contract between individuals, if a latent ambiguity exist in the description of the land, parol evidence may be resorted to, to explain it, and give effect to the intention of the parties.

A grant by the owner, of a certain number of acres in a particular tract, will authorize the grantee to locate it in any part of the tract, because the conveyance must be held to pass some interest, if such effect may be given it, consistently with the rules of law; and if uncertain or ambiguous, it must be construed most strongly against the grantor.

But these principles are not applicable to conveyances by the assessor, and parol evidence is not admissible to explain a latent ambiguity in such conveyance, or to locate the land. If the description by the officer, be so uncertain and incomplete, as to require the aid of extrinsic evidence, his deed is void.

A deed of an assessor, void upon its face for want of sufficient certainty in the description of the land it purports to convey, will not support the plea of five years limitations, under the sixteenth section of the statute.

A void deed may constitute color of title under the plea of limitations of ten years, so as to enable the party in possession, claiming under it, to hold by limitation to the extent of the boundaries discribed in the deed.

APPEAL from De Witt. Tried below before the Hon. Fielding Jones.

This was a suit by the appellee to recover from the appellants 3321 acres of land, described in his petition, and in the judg-

ment, as follows: "Beginning at the southwest corner of survey No. 18, class No. 2, of one league of land granted to R. H. Chisholm; thence, west, with the north line of a third of a league survey, 135 varas, to a stake, the northwest corner of said survey, from which a Post Oak bears south 40° west, 15 varas, and a Black Jack bears north 4° east, 6 varas; thence, south, with said survey 620 varas, to a stake, from which a Black Jack bears south 45° west, 11 varas, and another bears north 23° west, 12³⁄₁₀ varas; thence, west 2725 varas, to a stake, from which a Black Jack bears north 12° east, 63 varas, and another bears north 40° west, 77 varas; thence, north, 7420 varas, to the southwest corner of one league granted to Andrew Lockhart; thence, east, with the south line of said league, 1940 varas, to the northwest corner of a survey of one-fourth of a league granted to W. Lockhart; thence, south, with the west line of said fourth of a league, 2984 varas, to its southwest corner; thence with the south line of said survey, north 70° east, 1000 varas, to the northwest corner of survey No. 18, class No. 2; thence, with the west line of said survey, south, 4240 varas, to the place of beginning."

The appellants disclaimed, except as to twenty-five hundred acres, as described in a deed from the assessor and collector of taxes for De Witt county. And as to said twenty-five hundred acres, they pleaded limitation of five years under the sixteenth section of the Act of 1841. This tract was described in the assessor's deed as follows, to-wit: "Twenty-five hundred acres of land, being out of three-fourths leagues of land granted to William Arrington, on the west side of the Guadaloupe river, and adjoining the Chisholm league of land, and also a survey made for W. Lockhart; the said tract of land to commence at the beginning corner and taken in a square, if it will admit of it, out of said three-fourths of a league granted to William Arrington."

Upon the trial, the appellants offered in evidence, to sustain their plea of limitations, the deed from the assessor and collector, which was excluded by the court, upon the ground, as stated in the bill of exceptions, that the said deed, being on its face a tax title, could not be introduced in evidence for any purpose,

unless it were first shown that all the pre-requisites of the tax sale had been complied with.

*A. H. Phillips,* for the appellants.—Were it admitted for the sake of argument, that the sixteenth section of the act, could not be invoked to sustain a deed, void on its face, yet there is nothing in the act itself, much less in the reason of it, that will justify a distinction between a tax deed and any other. If any is to be made, it would seem most reasonable, that the advantage should be in favor of the one executed by an officer of the government. This, at least, should be presumed to be derived from under the sovereignty of the soil.

However this may be, the principle involved in the ruling, is believed to have been decided in the case of Pillow v. Roberts, 13 How. U. S. Rep. 472. In that case, the two pleas setting up the five and ten years' limitation were overruled, on special demurrer, as insufficient and informal. Under the general issue, evidence was subsequently offered, tending to establish the facts set up in the limitation pleas that had been overruled. The court rejected the evidence, and exception was taken to the ruling. In reviewing the decision, the Supreme Court say: " The case presents two questions: 1st. Whether by the law of Arkansas, the deeds offered in evidence (and which were regularly acknowledged and recorded according to law,) should have been permitted to go to the jury as evidence of a regular sale of the land mentioned therein for taxes ? 2d. Whether without regard to their validity, as elements of title *per se,* they should not have been received for the purpose of showing color of title, in connection with possession by the persons claiming under them, sufficient by law to bar the entry of plaintiff?"

The court decided both questions in the affirmative; and after adverting particularly to the Arkansas statute, upon the second question, made the following remarks as general principles, applicable to this class of cases: " Statutes of limitation are founded in sound policy. They are statutes of repose, and should not be evaded by a forced construction. The possession

which is protected by them, must be adverse and hostile to that of the true owner. It is not necessary that he who claims their protection should have a good title, or any title but possession. A wrongful possession obtained by a forcible ouster of the lawful owner, will amount to a disseisin, and the statute will protect the disseisor. One who enters upon a vacant possession, claiming for himself, upon any pretence or color of title, is equally protected with the forcible disseisor. Statutes of limitation would be of little use, if they protected those only who could otherwise show an indefeasible title to the land. Hence, color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims for himself, and of course adversely to all the world. * * * * * Color of title is received in evidence for the purpose of showing the possession to be adverse."

*Possession*, then, *with claim of ownership*, constitutes the title, under the statute of limitation, and not the *deed*. The latter is but evidence of an *adverse holding*. This purpose is accomplished by the deed, whether it be complete or defective; and the same doctrine is substantially held by this court, in the case of Charle v. Saffold, 13 Texas Rep. 94.

*Ballinger & Jack*, and *W. S. Glass*, for the appellee.— Will any sealed writing, under which a party for five years may hold possession of lands, give full title precluding all claims? Will a mortgage, a bond for title, a deed for a term of years, &c. ? Clearly not. The law does not speak in its broadest legal sense. It signifies a deed, in common acceptation—a deed between man and man, purporting to convey title to the land in controversy; and as to conveyances standing on exceptional grounds, it uses a general term, leaving their character as deeds to be tested and proved by the usual rules of construction and evidence. It further requires a valid deed, *ex facie;* an actual deed; an instrument by its own terms, or with such aid as the law requires, assuming and purporting to operate as a conveyance. Not that it shall proceed from a party having title, or

must actually convey title to the land; but it must have all the constituent parts, tested by itself, of a good and perfect deed. No instrument which demonstrates internally that it is *not* a deed can conform to the statute, nor can any which demonstrates that it depends on extrinsic facts, unless those facts are proved, and thereby it is established as a deed.

The instrument offered in this case is not a conveyance by the maker; assumes to convey no title or interest possessed by him; is made solely in an official character, by virtue of a special power conferred by law and the existence of certain facts therein recited. Its legal effect is, that because certain antecedent facts took place, therefore, it declares the right which parties thereby acquired. Can it be held, *standing alone,* to be such a deed as the sixteenth section of the Act of Limitations contemplates? Of itself, it neither makes nor purports to make any conveyance. It has no independent validity or force. The prerequisites to it are not merely its necessary foundation, they are the conditions to its own existence. Blackwell on Tax Titles, p. 430, says: "This deed, according to the principles of the common law, is simply a link in the chain of the grantee's title. It does not, *ipso facto,* transfer the title of the owner, as in grants from the government, or in deeds between man and man. The *operative* character of it depends upon the regularity of the anterior proceedings. The deed is not the title itself, nor even evidence of it. Its recitals bind no one. It creates no estoppel on the former owner. No presumption arises upon the mere production of the deed, that the facts upon which it is based had any existence."

In the absence of proof or *primâ facie* presumption of compliance with the pre-requisites of the law, the deed is mere "waste paper." (Id. 431, citing 2 Mich. 486; 11 Ill. 431; 16 Ohio, 24; 2 Greene, 300.) Instead of being *primâ facie* a valid deed, it is *primâ facie* void. (4 Sm. & M. 628.) It cannot be used in evidence without proof of its pre-requisites. (14 Peters, 322.) It carries with it no presumption of the authority of its maker. (Morris v. Himelick, 4 Blackf. 471, note, and 494.)

The officer exercises a naked statutory and special authority depending on the prerogative of the state, and the letter of the law for its support. (Blackwell, 46.) Being an agent, exercising a special authority, purchasers are required to know and prove that the land is offered for sale according to law; they must inquire the extent of his authority; they deal with him at their peril; and it is presumed against them, if the fact be so, that they know that a deed is given in violation of official duty and of the law. (See Blackwell, 66, 67, and references.) "The fact that the agent is a public instead of a private one, and that his authority is conferred by a statute, instead of writing upon parchment or foolscap, can make no essential difference in the application of the principle." (Id. 67; and see 85, 86.) The authorities showing the character and effect of tax titles, and the principles on which courts act in their construction and proof, are fully collated in the work of Blackwell, and we refer especially to chapters 2, 3, and 22.

It seems to be the opinion of the court, in Yenda v. Wheeler, 9 Texas Rep. 408, that the statute of 1848, (under which this assessment was also made,) did not make the tax deed *primâ facie* evidence, except of the regularity of the sale, leaving the authority of the officer, by compliance with the pre-requisites of the law, to be proved *aliunde*. Should any doubt exist on that question, we refer to 1 Scam. 335; 1 Doug. Mich. R. 121; 2 Id. 204; 2 Denio, 329; 3 Id. 595; 2 Barbour's S. C. Rep. 117; 1 Selden, 366; 4 Blackf. 70, 71, note, 494. That the proceedings and sale give the right, and not the sheriff's deed, see also Miller v. Alexander, 8 Texas Rep. 36.

The construction and the proof of this instrument, *as a deed*, depended, not on its own terms, but on the authority under which it was executed. It had no *primâ facie* character, no admissibility, no judicial standing, without proof of the facts on which it was founded. *Those being true*, then, the assessor purports to convey—not until then. It cannot be presumed, that the act of limitation, in requiring claim under a deed, *quoad* a sheriff's deed, or a tax deed, introduced any new rule of con-

struction or evidence, or intended to *test* their existence, or require their proof, on principles other than those which govern them in all other respects, and have always determined their character; and we submit it to the court as clear, that the authority of the officer must have been shown, before it can be held that the instrument which he executed was a deed.

The deed is void as a tax deed for want of a certain description of the land; nor can it be the basis of an adversary possession of land which is not sufficiently described.

The assessor levied on and sold 2500 acres, " to commence at the beginning corner, *and taken in a square, if it will admit of it*, out of said three-fourths of a league granted William Arrington." A levy must be certain and definite to enable purchasers to know what they are buying, and estimate its value; and unless it be so, is void. (Erwin v. Helm, 13 S. & R. 151; Haven v. Cram, 1 N. H. 93; Jackson v. De Lancy, 11 Johns. 373; 13 Id. 551; Jackson v. Rosevelt, 13 Id. 97; Ballance v. Forsyth, 13 How. 23.)

Were purchasers required to ascertain for themselves whether a square could be laid off including the whole 2500 acres? could a chancing bargain of the kind be sold by a public officer? If the square could not be so laid off, what did bystanders and bidders understand to be the consequence? That they would acquire 2500 acres *in a form as nearly square* as possible; or only so many acres as could be laid off in a square form. " Certainty in such a case is necessary to make the sale valid; for on the form of the acre its value may chiefly depend." (13 How. 23.)

The description is not only uncertain but impossible. By platting the three-fourths of a league described in the petition, it will be seen that 2500 acres cannot be obtained as called for.

WHEELER, C. J.—The decision of this case, depends on the question, whether the tax title on which the defendant relied to support his plea of the statute of limitations, is a " deed," within the meaning of the sixteenth section of the statute. (Hart. Dig. Art. 2392.) We agree with the counsel for the appellee

that the statute intends an instrument which is really and in fact a deed, possessing all the essential legal requisites to constitute it such in law: as it is very well expressed in the brief of counsel, it must be " an instrument, by its own terms, or with such aid as the law requires, assuming and purporting to operate as a conveyance: not that it shall proceed from a party having title, or must actually convey title to the land; but it must have all the constituent parts, tested by itself, of a good and perfect deed."

But we do not concur in the opinion, that because it is the deed of the assessor and collector of taxes, it is necessarily wanting in these requisites. Such a deed may be as valid and effectual to vest a title in the grantee, as a patent from the government. If all the requirements of the law necessary to confer on the officer the power to sell, have been strictly complied with, the sale and conveyance, if regularly made in pursuance of the power, will vest in the purchaser a good title. The difficulty, in this class of titles, is, in proving the regularity of the proceedings necessary to confer the power, which are conditions precedent to its exercise. But it does not follow that the conveyance is not a deed, because the power of the agent is not produced; the production of the power is necessary to give effect to the deed, and render it operative to pass the title, but not to constitute it a deed. A sheriff's deed is inoperative without proof of his power to sell; it is no evidence of title, without the production of the judgment and execution. And so of every conveyance executed by an agent or attorney in fact; the production of the power is necessary to complete the evidence of title. But it cannot be said that the conveyance is not a deed until the power is produced. If the power must be shown, then a defendant must not only have a deed, but a title good in itself, before he can claim the protection of the statute. Such manifestly was not the intention of the law. It will scarcely be denied that a party holding under a sheriff's deed might claim the protection of the sixteenth section of the statute; and it is not perceived that, as respects this question, there is any

difference between such a deed, and that of the tax collector. The validity of each depends equally on the power of the officer. (Robson v. Osborn, 13 Texas Rep. 298.) But it cannot be said, that the deed is void on its face, or that it is not a deed, until the power is produced.

But it is insisted, that the present deed is void upon its face, because it contains no sufficient description of the land conveyed. This is certainly a grave objection to the deed; and it appears to be well taken. The land conveyed is not described by metes and bounds, and by any certain matter of description or identity. It is to be taken out of the two-thirds of a league granted to William Arrington, " to commence at the beginning corner, and taken in a square if it will admit of it." Is it to be surveyed in a square? That depends on the form of the survey of the grant ; and by reference to the field notes of the survey, as set forth in the petition and judgment, it seems, that the twenty-five hundred acres, which the deed purports to convey, cannot be obtained in a square.

To what boundaries, then, is the defendant entitled to claim, by virtue of his five years possession under the deed? But the description is uncertain in itself. From its terms it is uncertain in what form the land is to be taken. Neither the owner of the land, the party in possession, nor the court, can know from the face of the deed, what are the boundaries of the claim. The deed manifestly is void for uncertainty in the description of the premises, unless it can be aided by matter extrinsic of itself. If it were a contract or conveyance between individuals, this unquestionably might be done, and effect given to the contract or conveyance. In a contract between individuals, if a latent ambiguity exists in the description of the land, parol evidence is resorted to for the purpose of explaining it, and giving effect to the intention of the parties; and where the estate intended to be conveyed, is sufficiently described in the instrument, the addition of a circumstance, false or mistaken, will be rejected as surplusage in order to carry the intention into effect. But the law in respect to the class of titles to which the present

belongs, is settled otherwise by the whole current of decisions, both in the federal and state courts. (Blackwell on Tax Titles, 450, 151 *et seq.*, and numerous cases cited in the text.) "A description sufficiently certain to convey land between man and man, and which, if contained in an agreement to convey, would authorize a court of equity to decree a specific execution, will not answer in the proceedings to enforce the collection of a tax." (Blackwell, 152.)

A grant by the owner of a certain number of acres in a particular tract, would confer a right of election upon the grantee, and authorize him to locate the quantity in any part of the tract he saw proper to elect, upon the principle that a conveyance must be held to pass some interest, if such effect may be given to it, consistently with the rules of law, and that, if uncertain or ambiguous, it must be construed most strongly against the grantor. But in this respect, it is said, there is a wide difference between the conveyance of the owner and a public officer. The former may sell upon his own terms, and may confer a right of election upon his grantee. But power to grant such a right is not conferred upon the officer of the law. He is the mere instrument to pass the title. He acts under a special and limited authority, conferred by the law, and not by the owner of the estate. In this proceeding the owner "has nothing to do—he intends nothing: the government is acting through its agents in hostility to him." The proceeding is construed strictly; and parol evidence is not admitted to explain a latent ambiguity in the description, or to locate the land. If the description by the officer be not so certain and complete as not to require the aid of extrinsic evidence, his deed is held to be void. (Blackwell, 156; 2 Ham. Rep. 287; Ewing v. Helm, 13 Serg. & Rawle, 151; 13 How. 23.)

Such is the strictness of construction which has been applied to the proceedings in the sale of land for taxes: upon which Mr. Blackwell in his treatise upon the law of Tax Titles, observes, "As things now stand, a tax title is no title at all. Out of the numerous sales made under the acts of Congress, between the

years 1800 and 1818, not a single one has been sustained ; and not exceeding ten, under the laws of the several states, out of at least twelve hundred which have found their way to the superior courts of the country. (Blackwell, 345.) Such has been the course of decision in the federal and state courts ; and whatever may be thought of the reasons upon which the doctrine of the decisions is founded, it is too firmly established to be now overthrown.

Upon the principles which have been uniformly applied to titles like the present, it is manifest, the deed in question must be held void for the want of a sufficiently certain description of the land it purports to convey. Being void upon its face, we think it is not such an instrument as was contemplated by the sixteenth section of the act of limitations. A deed which is void upon its face is a nullity. It is not a deed in fact and in law, in a legal, or any just sense of the term. It is not such a deed as we suppose the legislature meant when they employed that term in the statute.

It is to be observed, the question in this case is, not whether a void deed may constitute color of title under the plea of limitation of ten years, so as to enable the party in possession claiming under it to hold by limitation to the extent of the boundary described in the deed. That question is settled in the affirmative by the case of Charle v. Saffold, 13 Texas Rep. 94. (And see Whitehead v. Foley, lately decided at Austin ; Pillow v. Roberts, 13 How. 472.)

The question we are here considering relates exclusively to the meaning of the sixteenth section of the act of limitations ; it is, whether a deed which is void on its face for uncertainty, will protect a possession of five years, under this section of the statute. We are of opinion that it will not ; and consequently that there is no error in the judgment. It is therefore affirmed.

Judgment affirmed.